### PEOPLE ex rel. PERRY v. MAGEN.

(City Magistrate's Court of New York City. April 17, 1912.)

1. PAWNBROKERS (§ 5*)—STATUTORY REGULATIONS.

Greater New York Charter (Laws 1901, c. 466) §§ 316, 317, giving the police commissioner and his deputies supervision over pawnbrokers with a right to examine their books and search for stolen property, and providing that no property shall be taken from the possession of a pawnbroker without due process or authority of law regulating pawnbrokers, protects an honest pawnbroker, acting in entire good faith, from being obliged to give up to unknown persons, without proof, property on which he has made a loan; but a pawnbroker who refuses to surrender property to the rightful owner proving ownership and the larceny thereof and the pawning thereof by one having no claim may not rely on the statute for protection.

[Ed. Note.—For other cases, see Pawnbrokers, Cent. Dig. § 4; Dec. Dig. § 5.*]

2. PAWNBROKERS (§ 11*)—STATUTORY REGULATIONS—OFFENSES.

    A pawnbroker who refuses to restore to the owner property pawned with him by the thief or the receiver may not rely on Penal Law (Consol. Laws 1909, c. 40) § 1306, providing that on an indictment for larceny it is a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith, though his claim is untenable, since he has only a lien on the property and not a title, and he is guilty of larceny for forcibly retaining stolen property against the rightful owner with a felonious intent to appropriate the same to his own use.

    [Ed. Note.—For other cases, see Pawnbrokers, Cent. Dig. § 7; Dec. Dig. § 11.*]

Proceedings by the People, on the relation of John T. Perry, against Samuel Magen. Summons issued, and complaint taken.

Samuel Sturtz, of New York City, for defendant.

McADOO, City Magistrate. The defendant is a pawnbroker doing business at No. 76 Delancey street. On the 19th of March, 1912, a party, giving the name of Goldstein, pawned with him a gold watch and overcoat, on both of which there was loaned by the defendant the sum of $19, and, at the time the loan was made, two tickets were issued to Goldstein, one for the watch and the other for the overcoat, and proper entries were made in books kept by the defendant, as required by law.

On the 26th day of March, 1912, the complainant, together with a police officer, visited the defendant's place of business and requested permission to examine the books showing the entries of pledges. The books were then and there given to the police officer and complainant, and after inspection they requested of the defendant permission to see two certain pledges which were specified in the book. The defendant exhibited the pledges, a gold watch and overcoat. After an examination of the same by the complainant and police officer, the complainant stated that he had been robbed on the 19th day of March, 1912, and that the property which was then exhibited to him was his property and that they had been stolen from his possession. Thereupon the complainant and the police officer demanded that the defendant turn over the said watch and overcoat to them, which demand was refused by the defendant. The police officer thereupon arrested the defendant, without a warrant, and took him to the Magistrates' Court, where he was kept in custody about an hour, was released, and a summons requested charging the defendant with having stolen property in his possession. The person who committed the theft of the articles from the complainant has not been arrested.

When the parties came before me, the complainant said that he was ready to testify that he identified the watch by reason of certain marks upon it, together with its number, which made it certain to him that it was his property. My recollection is that he called the attention of the defendant to these marks of identification, and that he also identified the overcoat by certain marks and characteristics, to which he called the attention of the defendant and which he was ready to tes-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tify to. He also stands ready to testify, and has so notified the defendant, that these articles were stolen from him on the day named. The defendant informs me that he will not give up the property upon such proof being made before me; (1) that the property was stolen from the complainant; (2) that the property now in the possession of the defendant belongs to the complainant, but the defendant, relying upon his rights under the charter as a licensed pawnbroker, retains these goods until the loan which he made upon them has been paid.

The position of the defendant, as shown to me by the brief filed by his counsel, Mr. Samuel Sturtz, relies mainly upon two points: (1) That sections 316 and 317 of the Charter of Greater New York (Laws 1901, c. 466), which deal with the power of the police commissioner and his deputies as to the supervision and inspection over pawnbrokers and the right to examine their books in search of property claimed to have been stolen, and further provides, "But no such property shall be taken from the possessor thereof without due process or authority of law;" and, further on, "But no property shall be removed from the possession of any pawnbroker without the process of law required by the existing laws of this state or the laws and ordinances of the city regulating pawnbrokers." (2) That there is a lack of felonious intent upon the part of the defendant in retaining this property.

[1] I am of opinion that the provisions of sections 316 and 317 of the Charter of Greater New York, to which my attention is called, were intended as a check upon the drastic powers given the police commissioner and those under him in the supervision and inspection of pawnshops, to the end that they should not unreasonably or arbitrarily take property from a pawnbroker without proof as to the identity and the ownership of those claiming the same. It was intended to protect an honest pawnbroker, acting in entire good faith, from being obliged to give up to unknown persons, without proof, property upon which he had acquired a loan. When the pawnbroker stretches this protection for his lien into a refusal to give up property where proof is offered to him that the property was stolen, that the person who pawned it had no claim to it, and that the rightful owner asks for its restoration, I believe that he is going beyond the statute and that he is not acting under its protective clauses.

[2] Upon the question of felonious intent, section 1306 of the Penal Law (Consol. Laws 1909, c. 40) provides:

"Upon an indictment for larceny it is a sufficient defense that the property was appropriated openly and avowedly under a claim of title preferred in good faith even though such claim is untenable."

I do not think this would be a good defense for the pawnbroker should he refuse, in the face of proof that the property in his possession had been stolen, was pawned with him by the thief or the receiver, and that the claimant is the rightful owner, and who in the face of this refuses to restore it to him and claims the benefits of this section.

It is not necessary to cite the well-known cases in the courts of this state with reference to the felonious intent required to constitute the crime of larceny. This question was exhaustively discussed in the case of People ex rel. Perkins v. Moss, 187 N. Y. 410, 80 N. E. 383,

11 L. R. A. (N. S.) 528, 10 Ann. Cas. 309, and, as to appropriation of property in bad faith, so as to constitute larceny, in the case of Matthews & Co. v. Employers' Liability Corporation, 127 App. Div. 195, 111 N. Y. Supp. 76.

The pawnbroker is not openly and avowedly claiming title to the goods in question. He has simply a lien upon them as against a lawful owner who may have pawned them either directly or through his agents. It does not come under the rule laid down by the courts that an open and avowed claim of title, however untenable in law, robs the taking or appropriation of goods of the felonious intent necessary to constitute a larceny. The pawnbroker in this case is somewhat in the position of one who should find a valuable jewel in the street and should refuse to receive proof from the rightful owner as to property and persisted in keeping the same, claiming that the finding gave him title. Admitting, under the clause of the charter above referred to that the police have not the right to forcefully take the property from him and restore it to its lawful owner, that does not relieve him from the responsibility of retaining it against the rightful owner who offers proof as to his property. In brief, the law says to the pawnbroker, being duly licensed, that he has a lien upon property until the loan to the pledgor has been paid, and in the absence of any proof that the pledgor is the authorized and rightful owner; that, as a check upon the extraordinary powers given to the police on the supervision of his business and his books for the detection of crime, they should not forcibly take from him any property in his possession unless by the process of the laws of this state or of the ordinances of the city, which would mean, I am convinced, the offering of suitable and legal proof as to the property being stolen and the claimant being the rightful owner; that, when the rightful owner appears and offers reasonable and convincing proof of the original stealing and his rightful ownership, the pawnbroker is bound to restore the property. He can make no claim to title against the rightful owner. On the face of the case he has no pretext; it is not a plausible excuse proclaiming a title superior to that of the owner. He cannot say that he bought the property and therefore owns it. At best, he has only a lien upon it. This, in my judgment, does not correspond with the word "title" used in section 1306 of the Penal Law. He is forcibly retaining stolen property against the rightful owner and is therefore with felonious intent appropriating the same to his own use and is guilty of larceny.

I am sure that this construction of the law will make pawnbrokers more careful and compel them to aid the police in detecting thieves. The argument used so frequently that the pawnbroker runs the risk of being made the victim of a conspiracy by which one man pawns an article belonging to another, with his consent, and then the other swindler appears and claims the property and alleges it was stolen from him, is not at all analogous to this case. In the absence of proof, including the character and reputation of the claimant, the pawnbroker would be justified in refusing to deliver up property under such circumstances. If he was honestly mistaken as to the facts, he would not be guilty of larceny. In this case the attitude of the defendant is that

he does not care to have the proof submitted and he ignores the detailed descriptions of the property given him by the claimant and continues his possession of the property of another who had nothing whatever to do with the original loan nor did he receive any benefit from it.

Let a summons be issued and complaint taken.